UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GERALYN WARD-DAVIS,

    Plaintiff,

    v.

JC PENNEY LIFE INSURANCE COMPANY, a foreign insurer; and STONEBRIDGE LIFE INSURANCE COMPANY, a foreign insurer,

    Defendants.

CASE NO. C09-5637BHS

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO STRIKE

This matter comes before the Court on Defendant Stonebridge Life Insurance Company's (formerly known as JC Penney Life Insurance Company) ("Stonebridge") motion for summary judgment (Dkt. 8) and Plaintiff Geralyn Ward-Davis's ("Ward") motion to strike (Dkt. 11). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants Stonebridge's motion for summary judgment and denies Ward's motion to strike for the reasons stated herein.

ORDER - 1

# I. PROCEDURAL HISTORY

On October 9, 2009, Ward filed her complaint against Stonebridge alleging that Stonebridge had breached an insurance contract, breached its duty of good faith, violated the Washington Consumer Protection Act ("CPA"), breached its fiduciary duty, and inflicted emotional distress when it denied Ward's insurance claim. Dkt. 1. Stonebridge answered the complaint on January 11, 2010. Dkt. 5. On August 4, 2010, Stonebridge filed this motion for summary judgment contending that Ward is precluded from receiving benefits because of two exclusions in the insurance policy. *See* Dkt. 8. Ward filed a response to the motion for summary judgment on August 23, 2010 and simultaneously filed a motion to strike. Dkt. 11. On August 27, 2010, Stonebridge filed a reply to Ward's objections and a response to the motion to strike. Dkt. 14.

# II. FACTUAL BACKGROUND

In December 1999, Stonebridge issued an accidental death and dismemberment insurance policy (Policy No. 81AQ5R7285) to Ward's husband, Thomas Davis Ward ("Mr. Ward"), of which Ward was a beneficiary. Dkts. 1, 11. Under the policy, the beneficiary can receive benefits for an accidental death, subject to exclusions. The policy states that:

> INJURED means having suffered an Injury.
> INJURY means bodily injury caused by an accident occurring while the insurance is in force resulting directly and independently of all other causes.
> * * *
> If a Covered Person is Injured in an accident . . . not otherwise excluded, we will pay the applicable benefits . . . for the appropriate Loss.

Dkt. 9 at 6-7. The applicable policy exclusions provide that:

> No benefit shall be paid for Loss or Injury that:
> * * *
> 3. occurs while the Covered Person is taking or using any narcotic, barbiturate or any other drug, *unless taken or used as prescribed by a Physician*;
> * * *

ORDER - 2

       7. is due to disease, bodily or mental infirmity, or medical or surgical treatment of these.

Dkt. 9 at 8 (emphasis added).

Mr. Ward had been prescribed pain medication by his primary care physician, Dr. George S. Garfein ("Dr. Garfein"), for an injury he sustained to his lumbar spine while working as a miner in Alaska in 2002. Dkt. 11. Neither Ward nor Stonebridge provide details describing the nature and circumstances surrounding Mr. Ward's lumbar spine injury.

To manage Mr. Ward's chronic back pain caused by the 2002 injury, Dr. Garfein prescribed pain medication including oxycodone and methadone. *Id.* Mr. Ward died on April 14, 2008. *Id.* The coroner performed an autopsy of Mr. Ward and concluded that Mr. Ward's death was "[a]cute combined Methadone and Oxycodone overdose." Dkt. 9 at 15. However, the parties dispute the primary cause of death. Stonebridge alleges that Mr. Ward died from an overdose caused by over-using his pain medication. *See* Dkt. 8. Ward, through Dr. Garfein's declaration, contends that Mr. Ward's death was caused by a build-up of medication in his system. *See* Dkts. 12, 13. Dr. Garfein declares that Mr. Ward had been taking the medication as prescribed and that the levels of oxycodone and methadone in Mr. Ward's blood is not inconsistent with the prescribed usage. Dkt. 13, ¶ 7.

### III. DISCUSSION

**A.**    **Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which

the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 253). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Stonebridge's Motion for Summary Judgment**

    **1.     Narcotics Exclusion**

Stonebridge argues that the narcotics exclusion, policy exclusion number 3, separately and independently precludes Ward from receiving benefits because, according to Stonebridge, Mr. Ward over-used his prescription pain medication. Dkt. 8. Ward

ORDER - 4

argues that there is a material question of fact as to whether Mr. Ward was taking his medication as prescribed by Mr. Ward's treating physician. Dkt. 11. Ward provides her own declaration (Dkt. 12) and Dr. Garfein's declaration (Dkt. 13) in support of her contention that Mr. Ward was taking the pain medication as prescribed and that his death was caused by a build-up of medication in Mr. Ward's system. *Id.*

Stonebridge contends that Dr. Garfein's conclusions are actually expert opinions that are not based on his treatment of Mr. Ward. Dkt. 14 at 5. Stonebridge argues that Dr. Garfein's opinion is improper because, at this time, Dr. Garfein is only qualified to testify as Mr. Ward's treating physician. *Id.* The Court agrees that Dr. Garfein's statement that "[l]evels of Oxycodone and Methadone in the blood, build up over time" (Dkt. 13, ¶ 7) is an opinion that is unrelated to his treatment of Mr. Ward and is outside the scope of Dr. Garfein's personal knowledge as Mr. Ward's treating physician.

However, Dr. Garfein's personal knowledge of the amount of pain medication that he prescribed to Mr. Ward is properly within his scope as a treating physician. Therefore, Dr. Garfein's statement that "[t]he levels of Oxycontin and Methadone found in Mr. Ward's blood at the time of his death are not inconsistent with the use of his medication as prescribed by me" (Dkt. 13, ¶ 7) is a proper conclusion for a treating physician to make. As the prescribing physician, Dr. Garfein would know the amount of medication Mr. Ward should be taking and how often he should be taking it to treat Mr. Ward's pain. Furthermore, both Ward and Dr. Garfein offer testimony that, based on personal knowledge, Mr. Ward was taking his pain medication as prescribed. Dkts. 13, 14.

Stonebridge argues that its expert, Dr. Gary H. Wimbish ("Dr. Wimbish"), concluded that "Mr. Ward was *likely* not taking the methadone as prescribed, based on blood levels of methadone found by the medical examiner." Dkt. 8 at 4 (emphasis added). This conclusion is not definitive and a reasonable trier of fact could find that Mr. Ward

was taking the pain medication as prescribed. Thus, Dr. Wimbish's opinion does not preclude the Court from finding that a question of material fact exists.

Therefore, based on the evidence presented, the Court concludes that a question of fact exists as to whether Mr. Ward was taking his medication as prescribed by Dr. Garfein.

### 2.     The Exclusion for Medical Treatment of Bodily Infirmity

Stonebridge argues that the exclusion in Mr. Ward's policy for medical treatment of a bodily infirmity prevents Ward from receiving benefits. *See* Dkt. 8. Specifically, Stonebridge asserts that the pain medication prescription Mr. Ward received was medical treatment for his spine injury, which Stonebridge argues is a bodily infirmity and precludes coverage under policy exclusion number 7. *See* Dkt. 9 at 8.

Ward, in her response, argues that the medical treatment exclusion is ambiguous. Dkt. 11. She provides three potential interpretations of the exclusion language, submitting that the most reasonable interpretation would be that the policy excludes coverage "only when the insured is involved in an accident and suffers further injury or death as a result of medical negligence." Dkt. 11 at 8.

Stonebridge counters that the interpretation of the exclusion proposed by Ward is clearly different from the plain meaning of the exclusion and that no actual plain language ambiguity exists. Dkt. 14. This Court agrees. Under policy exclusion number 7, "No benefit shall be paid for Loss or Injury that: . . . is due to disease, bodily or mental infirmity, or medical or surgical treatment of these." Dkt. 9 at 8. The interpretation given by Ward is much narrower than the plain meaning of the policy exclusion. The exclusion is facially unambiguous: There is no coverage for a disease, bodily infirmity, or medical treatment of a disease or bodily infirmity. *Id.* This Court can interpret no other meaning from the plain language of Mr. Ward's policy.

While the policy limits coverage to specific injuries and death caused by an accident, exclusion number 7 expressly precludes coverage for the medical treatment that caused Mr. Ward's death. Ward contends that the adverse reaction to the pain medication is the accident that caused Mr. Ward's death and should, therefore, be covered under Mr. Ward's policy. However, the medical treatment policy exclusion expressly precludes recovery where death was caused by medical treatment of a bodily infirmity[1] or disease. "Disease" is defined in the dictionary as "a deviation from the healthy and normal functioning of the body." BLACKS LAW DICTIONARY, 501 (8th Ed.). Under this definition, Mr. Ward's back injury must be classified as a disease. Thus, exclusion number 7 clearly precludes recovery for Mr. Ward's death, which was caused by the medical treatment of a disease.

Even if Ward were to argue that the work accident was the accident that ultimately caused Mr. Ward's death, the medical treatment exclusion would still apply because the work accident must be the proximate cause of death. Under Mr. Ward's policy, "injury means bodily injury caused by an accident . . . resulting *directly and independently* of all other causes." Dkt. 9 at 6. The direct and independent cause of Mr. Ward's death was an adverse reaction to pain medication. While the work accident may have been the reason that Mr. Ward was taking the pain medication, the work accident was not the proximate cause of his death.[2]

---

[1] An "infirmity" is defined in the dictionary as physical weakness caused by old age or disease. *See* BLACKS LAW DICTIONARY, 794 (8th Ed.). The Court notes that the definition of "bodily infirmity" may apply; however, the definition of disease is more appropriate.

[2] The Court does not reach the issue of whether exclusion number 7, given a different set of facts, could be applied in a way that would swallow the purpose of the policy altogether. It would seem to the Court that to avoid this issue, the exclusion cannot be applied to preclude coverage where a covered injury, regardless of whether a disease or bodily infirmity results, is the proximate cause of the insured's loss or death.

ORDER - 7

Therefore, summary judgment should be granted in favor of Stonebridge.

### 3. Consumer Protection Act ("CPA"), Bad Faith, and Emotional Distress Claims

Stonebridge argues that Ward cannot prove that Stonebridge violated the CPA or breached its duty of good faith. Dkt. 8. Ward does not expressly object to either of these contentions, and only states that the bad faith and CPA claims should be submitted to the trier of fact. Dkt. 11. This statement comes after she argues that the breach of insurance contract claims should not be dismissed on summary judgment. Ward fails to address Stonebridge's express contention that Ward cannot prove the elements for a bad faith claim or the elements of a claim under the CPA.

Additionally, Stonebridge argues that the Court should grant summary judgment on Ward's emotional distress claim because "Ward has offered no evidence of emotional distress to support this claim." Dkt. 8 at 10. Ward never addresses the emotional distress claim in her response.

Under Local Rule CR 7(b)(2), "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Stonebridge's contentions that (1) Ward fails to prove the elements of a bad faith claim and CPA claim, and (2) Ward fails to a state claim for which relief can be granted for the emotional distress claim, are thus considered meritorious.  Therefore, the Court grants summary judgment in favor of Stonebridge on Ward's bad faith, CPA, and emotional distress claims.

### C. Ward's Motion to Strike

Ward moves this Court to strike a letter by Dr. Gary H. Wimbish ("Dr. Wimbish"), Stonebridge's expert witness on toxicology, submitted in Judy Lovelady's declaration (Dkt. 9). Dkt. 11. Ward argues that the letter submitted in the declaration is hearsay and does not provide Dr. Wimbish's qualifications as an expert witness. *Id.* Stonebridge

subsequently submitted an authenticating letter from Dr. Wimbish and his curriculum vitae. Dkt. 15.

Under Fed. R. Evid. 702,

> a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Here, Dr. Wimbish's curriculum vitae shows adequate "knowledge, skill, experience, education, and training" to be qualified as an expert. *Id.*

Finally, Ward's hearsay objection to Dr. Wimbish's letter is predicated on the fact that the letter was not authenticated because it was contained in Judy Lovelady's declaration. However, Dr. Wimbish's letter was authenticated by Dr. Wimbish when he submitted his declaration (Dkt. 15) with Stonebridge's reply (Dkt. 14). Under Fed. R. Evid. 901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Dr. Wimbish's declaration eliminates the hearsay issue.

Therefore, Ward's motion to strike is denied.

## IV. ORDER

It is hereby **ORDERED** that Stonebridge's motion for summary judgment (Dkt.8) is **GRANTED** and Ward's motion to strike is **DENIED**. This action is hereby **DISMISSED with prejudice**.

DATED this 1st day of October, 2010.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 9